## Champion Eslow and another v. Jay P. Mitchell.

*Secondary evidence: Copy: Parol testimony.* There are no degrees of secondary evidence; and where an original paper is lost, and no counterpart is presumed or required to exist, its tenor may be proved by parol as well as by copy; but any failure to produce a copy, if it is within the power of the party to produce one which is known to be accurate, may be regarded as bearing upon the credit to be given to the parol testimony.

*Lost instrument: Subscribing witness.* It is not necessary to produce a subscribing witness to a lost instrument. Such witnesses are not expected to be able in all cases to identify instruments, except such as bear their own genuine signatures, and are not presumed to know the contents of the papers they attest.

*Lien: Tender: Security: Debt: Payment.* A tender, regularly and lawfully made, discharges a lien, and while the *debt* is not thereby discharged without payment, yet the security is destroyed at once. And the holder of a security upon which a party authorized makes a tender, is not concerned where or on what terms the person tendering the money obtained it, so long as he could have got payment by accepting the tender.

*Tender: Agent: Authority.* A creditor cannot lawfully refuse a tender by an agent duly authorized, if he has reasonable opportunity to learn his authority.

*Deposition: Justice of the peace.* Where a deposition to be used in a circuit court, is taken in another county under § 5892, C. L. of 1871, it may lawfully be taken before a justice of the peace.

*Evidence.* Where a witness, being asked if he knew the subject matter of the suit, replied by giving a general detail in outline of the facts claimed by the parties, it was held to be *no assertion of any of such facts, and therefore not* objectionable.

*Creditor: Debtor: Transfer: Fraud.* A creditor partly secured, has no right to complain of the transfer of his debtor's remaining interest as a fraud against him, unless he has obtaind a lien upon it by due legal process; no one who has not prosecuted his claims, has any legal concern with his debtor's dealings with property.—*Glynn v. Phetteplare, supra, p. 383,* approved and followed.

*Chattel mortgage: Tender: Trover: Mortgagee.* A mortgagee of chattels who sold them before condition broken, was held liable in trover for not restoring them upon a lawful tender of the amount due. Such a sale was unlawful, and could not exonerate the mortgagee from the duty of having the property on hand ready to be returned at that time, and the mortgagor and his vendees were not bound to recognize the sale or to look to any one else unless they chose.

*Heard January 11. Decided April 9.*

Error to Calhoun Circuit.

*Brown & Patterson,* for plaintiffs in error.

*Rienzi Loud,* for defendant in error.

CAMPBELL, J.

The plaintiffs in error, who were defendants below, held a chattel mortgage on certain articles used in a billiard saloon, given by one George W. Closson, in January, 1870, and falling due March 15, 1870. They were in possession of the chattels from a time not long after the date of the mortgage. There was evidence tending to show a sale and conveyance of the goods by the mortgagees, to one Teachout, in February, 1870, before the mortgage matured. Some time before its maturity, Closson empowered one Lane as his agent, to pay the mortgage and get the property back, and dispose of it. Lane tendered the amount, on the day it became due, and the mortgagees did not accept the money, nor return the goods. Lane then sold the property to Mitchell, who made demand, and on refusal brought trover.

The principal questions arise upon the effect of the tender, and of the sale to Teachout, and upon the validity of

the transfer to Mitchell.    Some further questions also arose on the trial, upon rulings on evidence.

To prove the power of attorney to Lane, evidence of its loss was given, and it was then made out by secondary evidence.    Lane was allowed to show its contents from memory, and this was objected to on two grounds: *first,* because there was better evidence in the form of a copy, in the hands of Mitchell's counsel; and, *second,* because there was a subscribing witness who should have been sworn.

The supposed copy did not appear to have been compared by Lane, so that he could have identified it, and there is no rule of law that requires secondary evidence to be of one kind rather than another, where the writing is a private writing, and no counterpart is legally presumed or required to exist.    If the evidence produced does not clearly show the tenor of the document, of course it fails; and if parties willfully keep back evidence in their possession, which might clear up a doubtful point, their conduct will have a tendency to injure their case.    But there is no doubt private papers may be made out by parol secondary evidence, and the objection to it, if there be any, is one of weight and not of competency.    And in this case, for any thing appearing, it may have been the best attainable, and the most satisfactory.

There is no force in the objection that the subscribing witness (if there was one) was not produced.    Such witnesses are required and expected to establish the genuineness of their own, and of the party's signature, to an original paper.    But they are not required or supposed to know the contents of the documents they attest, and are no more likely to be able to give secondary evidence of their purport, than any other persons.    They are expected to know their own handwriting, and to say whether the paper appearing to bear it, was in fact so verified, but not whether

they ever attested a paper which they have no means of identifying. It is not usual for such witnesses to charge their memories with the contents of all the papers they have seen executed.

It was also objected, that the money tendered was borrowed for the occasion, and that the tender was not kept good. But it cannot concern a creditor, from whom or. on what terms a debtor gets the money to pay him, if the money itself is ready and available. And while a tender does not satisfy a debt, unless kept good, yet it discharges a lien upon property at once, when seasonably made and not accepted.—*Moynahan v. Moore, 9 Mich. R., 9; Caruthers v. Humphrey, 12 Mich. R., 270; Van Husan v. Kanouse, 13 Mich. R., 303.* In the present case the validity of the lien, and not the continuance of the debt, is the matter in issue.

It was also urged that the mortgagees could not be compelled to accept a tender from Lane, unless they had an opportunity of knowing his authority, which it is claimed was not given here. Upon the facts there was some conflict of testimony, but the charge of the court was very strong in requiring that they should have a reasonable opportunity to see the paper, and learn the extent of the authority; and there was evidence which tended to show they had this opportunity, which we must assume was satisfactory to the jury.

Some questions were raised upon a deposition taken in another county before a justice of the peace. An objection going to the proof of distance between the place of trial and that where the deposition was taken, is not now insisted on, but the power of the justice is denied.

The section under which this testimony was taken, is published as *section 5892, in the Compiled Laws of 1871.* It provides for the examination of witnesses in or out of the

county.    If within the county where the cause is to be
tried, the deposition, if to be used before a justice, must be
taken by that justice, and by no other person.    If before
arbitrators, or referees, or before the circuit, or probate court,
the testimony must be taken before a circuit court com-
missioner or judge of the circuit court.    If taken in
another county, the section further provides that it may be
before " any justice of the peace, circuit court commissioner,
or judge of the circuit court," of such county.

This language is not ambiguous, and we do not see
such a clear intent to confine the action of justices of the
peace to evidence to be used before other justices, as would
authorize us to import such a condition into the statute.
It may be very convenient to have distant witnesses exam-
ined in their own townships, and while depositions must be
fairly and regularly taken, we cannot say that the legislative
action was taken under any belief that justices might not
act in one case as safely as in another.    There was an
evident reason for having witnesses in the same county
examined before the justice who was to try the cause, and
who would thus have the benefit of seeing the witnesses.
This might be impracticable in causes pending in courts of
record.    But where the hearing is to be had in a county
where the witness is not produced, it can make little differ-
ence who examines him.    And there is certainly no pre-
sumption that a justice will not take testimony properly.

The witness was asked if he knew the subject matter
of the suit, and answered by describing it as a suit in tro-
ver to recover the value of personal property bought by
plaintiff of one Closson, of which defendants had taken pos-
session, refused to deliver up on demand by plaintiff, and
converted to their own use, being the same goods and
chattels which had been previously mortgaged by said
Closson to said Eslows, but which said mortgage lien said

plaintiff claimed had been discharged before his purchase of said goods and chattels, by payment or tender of full payment of said mortgage lien when the same was due on the part of said Closson.

This answer was objected to as a conclusion of law. We think it was a mere description of the suit, and not in any way an assertion of the rights of either party, and that it was not objectionable.

An attempt was made to avoid the effect of the conveyance to Mitchell, by showing that it was designed to hinder and defraud creditors. And it is claimed here that this defense was material and admissible.

We think the court below was right in excluding it. If Closson had never disposed of the property, and had brought this suit himself, defendants could not have claimed any lien on the property beyond the chattel mortgage. A creditor has no right to hold a debtor's property on which no lien has been created. If he has no specific claim upon it, he can only reach it by execution or attachment. And no one who has not obtained some legal hold upon it, can have any legal concern with any disposition a debtor may make of his effects. It could in no way affect the defendants in the trover suit, whether Mitchell received the property fairly or unfairly, if done with Closson's assent, because, so far as they were concerned, unless they should obtain a levy or other claim against it, Closson had a right to do with it as he pleased.—*Glynn v. Phetteplace, supra, p. 283.*

The only question remaining is, whether the right to recover in this case was barred by the previous sale to Teachout.

This was not an assignment of the mortgage, but a sale of the goods. It was made before the mortgage was due, and when the mortgagees had no right whatever to dispose of the property. No title passed by it. The mortgagees

. 26 mich.—64.

were bound to have the property on hand, and to return it when the money was tendered, and any disposal of it in violation of this duty, was illegal. They could not shift their liability to a third person and get rid of it themselves, and, as between them and Closson, or his assigns, they were bound to deliver up the goods on demand. This obligation arose out of the express terms of their own contract, by which they originally obtained possession, and became bailees. They cannot defend themselves by their own wrong. The findings of the jury, of the previous sale, and that they had lost control of the goods, were therefore immaterial, as they could not evade the duty of having them ready for the owner, and he was not bound either to affirm the sale, or to pay any regard to it. He had a right to look directly to the only persons who had ever been in privity with him.

There was no error in the rulings, and the judgment must be affirmed, with costs.

The other Justices concurred.