## Daniel Day v. Caroline O. Backus.

*Slander: Libellous letter: Privileged communication: Burden of proof: Points not specifically raised.* In an action of slander for words contained in a letter written by defendant, where the letter itself contains nothing on its face to indicate that it was privileged, or written under circumstances which would prevent it from being actionable, and 'could therefore only be made privileged, if at all, by extraneous evidence, the burden of proof is on the defendant to show that it was thus privileged; and where such letter is shown to have been a reply to one written to defendant, and the latter has neither himself introduced the letter thus sent to him, nor raised any objection at the time to the failure of the plaintiff to call for its introduction, he will not be entitled, on the basis of any presumption that his letter was strictly responsive to that to which it was a reply, to raise the question of its admissibility in evidence unaccompanied by the other letter, by a request to charge, that if defendant's letter was written in answer to one sent to him, and was strictly responsive and without malice, and written in the ordinary course of business, defendant was entitled to a verdict.

*Evidence: Points not specifically raised: Record: 'Presumptions.* Where, in such case, the libellous letter was lost and its contents were sought to be proved by secondary evidence, and the bill of exceptions, where it refers specifically to it, though showing that sworn copies were identified, fails specifically to indicate that any of these copies were read in evidence, or to state specifically that they were not, but does show that such letter was treated as read, that a witness referred to it as read, and that no objection or instruction was presented pointing out distinctly this deficiency in the proofs, and where the point is sought to be raised only on a refusal to grant the general charge that under the evidence the plaintiff was not entitled to recover, it will be presumed that the letter was either proved, or so far treated as proved, as to preclude the raising of the objection in this obscure manner.—CHRISTIANCY, J., dissenting.

*Submitted on briefs October 6.  Decided January 29.*

Error to Cheboygan Circuit.

*Trowbridge & Atkinson,* for plaintiff in error.

*D. R. Joslin,* for defendant in error.

CHRISTIANCY, J.,

This was an action of slander brought by the defendant in error, against the plaintiff in error, in the Cheboygan circuit. Judgment was rendered for the plaintiff below.

Numerous exceptions were taken, of which we shall notice only those relied upon on the argument in this court.

The slanderous words complained of, are alleged to have been contained in a letter written by Day (defendant below), from Detroit, to one Merrill of Port Huron, who was then employed as an attorney for Mrs. Backus, in some matter, but what it was, or whether any thing concerning any matter in which Day was interested, does not appear by the record. But Merrill, who was sworn for the plaintiff, says he wrote a letter from Port Huron to Day at Detroit, and received the letter in question from Detroit in reply, purporting to be from defendant, and that he showed this letter to the plaintiff, which, by the way, is the only publication of the slander which the evidence tended to show. The letter of Merrill, to which that of Day was in reply, was not introduced or called for on the trial, nor any evidence of its contents. And it is alleged as error, that the court refused to charge, "that if the letter written to Merrill was written in answer to one from him, and was strictly responsive and without malice, and written in the ordinary course of business, the defendant is entitled to a verdict;" and in support of this exception it is now urged, that the letter written by Day to Merrill must be presumed to be responsive to that to which it was a reply. It is said, Merrill's letter may have contained an inquiry as to her character, and that defendant Day might have innocently answered as he did; and, therefore, without the introduction of Merrill's letter, that of Day should not have been allowed to go to the jury at all, if otherwise properly authenticated, as evidence of slander.

But Merrill's letter having been written to Day, he, Day, must be presumed to have it in his possession, and not Merrill, or the plaintiff. There can be no doubt of defendant's right to produce it on the trial, to explain or mitigate, or, so far as it might go, to justify the slanderous words in his letter to Merrill. True, the plaintiff also had a right to call upon the defendant for it, and if not produced, to give evidence of its contents; and it is possible that had the objection for want of this evidence, on

the part of the plaintiff, been made before the evidence was closed, so that the plaintiff might have obviated the objection by calling for the letter, the objection of the defendant for want of this evidence might have had some weight; but upon this we give no opinion. The defendant did not see fit on the trial, either to offer the letter, or to raise any objection to its non-production; and the only inference fairly deducible from this is, that the defendant was satisfied the letter of Merrill would not have helped his case, if introduced.

But Day's letter to Merrill, which is alleged to have contained the slander, was not introduced. Sufficient evidence was, however, we think, given of its loss, which seems to have occurred shortly after the affidavit to hold the defendant to bail was made (about a year before the trial); and that both Merrill and Joslin, the plaintiff's attorney, made copies of it before it was lost, and that all the material portion of the letter was also copied in the affidavit to hold to bail. But neither of them testify that the language as set out in the declaration was a copy of the letter, nor whether or how far it resembled it. And neither of the copies made by Joslin or Merrill, nor the affidavit to hold to bail (and which they testify contained a copy), was introduced. And the neglect to introduce such copy, or any sworn copy of the letter, is, under the circumstances appearing in the record, not a little remarkable. Immediately after the proof by Joslin and Merrill, that they had taken copies (Merrill stating that the copy contained the whole letter, except the address and signature and the words: " I will meet you in Cheboygan "), and after the cross-examination of the latter, which closed by his stating: " Recollect distinctly that the copy is full, except the language I have used," the record proceeds: " The plaintiff's counsel then offered to read the copy referred to in evidence. The defendant's counsel objected that it was inadmissible as secondary evidence, there being no sufficient proof of the original, and of its loss and a search for it.

Also that it was incompetent to prove a part of the document containing the alleged slander, without proving the whole. The court overruled the objection, and the defendant's counsel excepted."

Here, then, as the next step, we should expect to see the plaintiff's counsel offer one of the copies they had sworn to having taken. But just here a change takes place. The record at this point proceeds to state: " The plaintiff's counsel then read from the declaration the language alleged to have been used, which will appear by reference to the declaration, and which is made a part hereof. The plaintiff was then sworn on her own behalf," etc., etc.

The record does not state that this portion of the declaration was read as evidence, or as a copy, but simply that the plaintiff's counsel then read it; and from the fact that the declaration had not been proved to contain a copy of the letter, or any part of it, while it was in evidence that three copies had been made and not one of them read, I do not think that we can fairly infer that this portion of the declaration was read or offered, or understood to be read or offered as evidence, especially as the counsel had a right to read it at all events. And had I been defending, and the plaintiff's counsel had so read a portion of the declaration, I should have supposed it was done for the purpose of comparing with the copy about to be introduced, and to show the conformity of the forthcoming proof by copy, to the charge in the declaration. The comparison was to be made, and it was immaterial which was read first. Such, I think, must have been the understanding of the defense, as they made no objection, which they naturally would have done, had they understood the reading of the declaration as evidence, when they had objected to the copy, and when there was not a word of evidence to show it contained a copy. The offer to read a copy, and the formal manner in which the reading from the declaration is stated, precludes all inference that any thing else was read as a copy.

The plaintiff was then sworn on her own behalf, and

after proving a letter from Day to herself, she says (and this is the only evidence of the contents of the letter): "I saw *the letter just introduced in evidence,* containing the language used in my declaration.    It was since I received the one just sworn to by me."    Now, if it be claimed that this is evidence that the declaration contained a copy of Day's letter alleged to contain the slanderous words, I reply, that, without reference to the much mooted question whether there are any degrees of secondary evidence, or whether mere parol evidence of the contents of Day's letter could be given, so long after it was written, when it was shown that three copies were taken by disinterested persons immediately after it was received (which, for myself, I think was the best evidence.—*Eslow v. Mitchell, 26 Mich., 500*), I think it quite clear from her testimony above quoted, that she mistook the reading of the declaration by her counsel, for the reading of the copy of the letter to which they had sworn,—a very natural mistake in the way that reading came about.    There is no other way of explaining her language: "I saw the letter just introduced in evidence, containing the language used in my declaration," when nothing but the charge contained in the declaration had been read.

I think, therefore, the requests to charge, that "there is no evidence tending to show that the defendant ever made or published the slander charged in the declaration with reference to the plaintiff," and that "under the pleadings and evidence the defendant is entitled to a verdict," should have been granted, and were erroneously refused.

I think these requests were sufficiently specific to cover the failure of proof of the letter; but on this point my brethren are of a different opinion.

Several other objections were relied upon on the argument; but as in my view the letter in which the alleged slander was contained was not in evidence, and the judgment should be reversed for this cause, the other points do not arise.    I think the judgment should be reversed, with costs, and a new trial awarded.

CAMPBELL, J.

It is very clear that there is nothing on the face of the libellous letter to indicate that it was privileged, or written under circumstances which would prevent it from being actionable. If it could be made privileged, it could only have been so by extraneous evidence, which, for the reasons given by my brother Christiancy, should have been given by the defendant below, who had the burden of proof, and was the recipient of the letter on which the claim was based.

And I agree with my brother Christiancy, except as to the question whether there was a failure to read to the jury the libellous letter. The record does not say it was read, in so many words, and the portion referring to it, taken alone, would seem to indicate it was not. But taking the whole record together, it seems to me it was treated as read. A witness referred to it as read, and the defendant below asked a charge upon its meaning. A request, that the evidence would not entitle the plaintiff to recover, was not, under the varied claims of the defense, calculated to draw attention to the want of this specific proof, and had it been pointed out, the deficiency could probably have been supplied. Under such circumstances, there having been no specific statement in the bill of exceptions that there was no such proof introduced, and no instruction or objection pointing it out distinctly, I think the presumption must be that it was either introduced, or treated as introduced, so as to preclude the objection now.

Upon the rest of the case I concur with the views of my brother Christiancy.

The judgment should be affirmed, with costs.

GRAVES, CH. J., and COOLEY, J., concurred.