BARODA STATE BANK v. PECK.

1. EVIDENCE — LOST LETTER — EVIDENCE OF LOSS SUFFICIENT TO PERMIT SECONDARY EVIDENCE.

Testimony by the cashier of a bank that he delivered a certain letter to the bank's attorneys and that, when the trial came on, after searching the attorneys' safe and all the files in their office and every piece of stationery in the bank, he was unable to find it, was sufficient proof of its loss to permit of the use of secondary evidence.[1]

2. SAME—HOLDER OF COPY OF LOST LETTER MAY NOT TESTIFY TO CONTENTS WHERE FAILURE TO PRODUCE IT NOT EXCUSED.

In an action based on a letter guaranteeing the payment of certain drafts, where the original letter was lost and plaintiff introduced a copy, the ruling of the trial court excluding the testimony of defendant as to the contents of the letter and that the copy introduced was not an accurate one, on the ground that defendant's unexplained failure to produce a copy, which he claimed to have, rendered his testimony inadmissible, is sustained, on error, by an equally divided court.[2]

[1]Evidence, 22 C. J. § 1351; [2]Id., 22 C. J. § 1379.

3. SAME—TRIAL—INSTRUCTION.

Under the circumstances of this case, an instruction by the trial court that defendant's liability would be established if the jury found that the copy introduced by plaintiff was substantially a copy of the original, *held,* by an equally divided court. not reversible error.[3]

Error to Berrien; White (Charles E.), J.    Submitted January 22, 1926.    (Docket No. 128.)    Decided July 22, 1926.

Assumpsit by the Baroda State Bank against Will H. Peck for certain unpaid drafts.    Judgment for plaintiff.    Defendant brings error.    Affirmed, by an equally divided court.

*John J. Sterling,* for appellant.

*Gore & Harvey,* for appellee.

McDONALD, J.    This action is brought by the Baroda State Bank to recover the amount of certain unpaid drafts from the defendant, Will H. Peck, who is a commission merchant doing business in Chicago.

The action is based on the following letter:

"Chicago, June 12, 1922.
"CASHIER, BARODA BANK,
    "Baroda, Mich.
"*Dear Sir:*  In confirmation of a conversation with Mr. Dorr yesterday, I hereby agree to honor all drafts to cover payment for merchandise by check made and signed by Mrs. Gladys T. Parkinson for me, on presentation.

"I should prefer having them made through the Continental & Commercial National Bank of Chicago, if as convenient for you.
                            "Truly yours,
                            "WILL H. PECK."

After this letter was received by the bank, Gladys

---

[3]Appeal and Error, 4 C. J. §§ 3013, 3113.

Parkinson, who was a daughter of the defendant, and who was engaged with her husband in buying fruit, went to the bank and opened an account in the name of the defendant. It is the claim of the plaintiff that in accordance with its agreement with the defendant, as the Parkinsons bought fruit, they would issue checks in payment therefor on the fund kept in this account, and at the close of each day's business would total the amount paid and draw a draft upon the defendant, or upon other people to whom fruit was shipped. These drafts were treated as cash by the bank and deposited in the defendant's checking account. At the close of the season the drafts honored by the bank on account of the defendant, and which were not paid by him, amounted to $6,691.20. At the trial plaintiff claimed that the original of the letter upon which it based its action had become lost and it was permitted to introduce the copy which we have here quoted. The defendant admitted that he sent the bank a letter on June 12, 1922, but denies that this is a correct copy, and claims that if the original could be produced it would show that he was not to become liable for the payment of the drafts with which he has been charged. In further defense to the action, he claims that on the 18th day of July, 1922, he sent the plaintiff the following telegram:

"To Bank at Baroda,
    "Baroda, Michigan.
"Do not honor any draft made on me by Parkinson unless specifically instructed by me by wire or letter.
                    (Signed)   "Will H. Peck."

The defendant says that he was not indebted to the bank at the time his telegram was sent, and that, having thus canceled the agreement, he was not liable for any drafts thereafter issued. The bank denies having received it. The only issue submitted to the jury was whether the alleged copy of the letter intro-

duced in evidence was an accurate copy of that which defendant mailed to the plaintiff bank on June 12, 1922.     The jury found for the plaintiff and judgment was entered on the verdict.     The defendant brings error.

1. Complaint is made on the ruling of the court in receiving in evidence the alleged copy of the original letter.    It was insisted by the defendant's counsel that the proof offered as to the loss of the original was not sufficient to warrant the admission of any secondary evidence.    We think that counsel is mistaken in his statement as to what the evidence shows in this regard.    Mr. Moore, cashier of the bank, testified to having delivered the original letter to the plaintiff's attorneys; that when this trial came on it could not be found; that in his presence the attorneys made unsuccessful search of their safe and of all the files in their office; that he searched over every piece of stationery in the bank but was unable to find it.    This was sufficient proof of loss to permit of the use of secondary evidence.

2. Error is also assigned on the ruling of the court in refusing to allow the defendant to testify as to the contents of the original letter, or to testify that the copy introduced in evidence by the plaintiff was not an accurate copy.    The defendant had testified that the original letter was written by him in long hand; that he made a copy of it, which he thought was in the possession of his attorneys in Chicago; and that it was not produced at the trial because he supposed the original would be used.    When he offered to testify as to the contents of the original paper, the court excluded his testimony on the theory that, the original having been lost, the copy was the next best evidence; and that, in the absence of any showing that his copy was lost and could not be produced, he should not be allowed to give oral testimony of the original letter.

235—Mich.—35.

All of the evidence received and offered to establish the contents of the lost letter was secondary evidence. The copy which the defendant failed to produce or to account for was secondary evidence. The question presented by the court's ruling is this: May a party give parol evidence of a lost document when it appears that he has a copy which he is able to produce? Following the English rule, it has been held in this State that there are no degrees of secondary evidence. The original having been lost, the copy and the oral testimony are both secondary evidence. Both are competent evidence in establishing the contents of the lost paper. The question was first before this court in *Eslow* v. *Mitchell,* 26 Mich. 500. In that case it was sought to establish by oral testimony the contents of a lost power of attorney. Objection was made on the ground that better evidence in the form of a copy was in defendant's possession. In holding that oral testimony was admissible, the court, speaking by Justice CAMPBELL, said:

"There is no rule of law that requires secondary evidence to be of one kind rather than another, where the writing is a private writing and no counterpart is legally presumed or required to exist. * * * There is no doubt private papers may be made out by parol secondary evidence, and the objection to it, if there be any, is one of weight and not of competency."

In *Dillon* v. *Howe,* 98 Mich. 168, and in *Phillips* v. *Benevolent Society,* 125 Mich. 186, the court departed from the rule laid down in *Eslow* v. *Mitchell, supra,* and held the oral testimony of a lost paper was not competent if a copy was available. However, in *People* v. *Christian,* 144 Mich. 247, it reaffirmed the rule of *Eslow* v. *Mitchell,* and squarely held that there are no degrees in secondary evidence.

The current authority in this country, as shown by the adjudications in a majority of the States, has

adopted what is known as the American rule, which holds that a copy of a lost paper is the next best evidence, and if it is available, oral evidence is inadmissible.    The relative merits of the English rule and the American rule are discussed in 2 Wigmore on Evidence (2d Ed.), § 1264 *et seq.,* and in 2 Jones' Blue Book of Evidence, § 208.

In this State we are committed to the English rule, which holds that there are no degrees in secondary evidence, and that a party may give oral testimony of the contents of a lost letter which is a private writing, even though he may have a copy in his possession or control.    The court erred in excluding the oral testimony of the defendant and as the ruling prevented him from submitting evidence on the only issue of fact in the case, it was reversible error.

3. It is further claimed by the defendant that the court erred in instructing the jury that the defendant's liability would be established if they found that the copy of the letter which plaintiff had introduced in evidence was substantially a copy of the original. In his charge, as given, the court instructed the jury that there was no liability on the part of the defendant unless they found that the copy was an exact and accurate copy of the original letter.    After considering the case for some time the jury returned for further instructions.    They wanted to know if they must find that the copy was an exact copy.    The court then informed them that it would be sufficient if they found it to be substantially a copy.    This instruction was wrong.    The plaintiff's action was based on a letter of guaranty of which the copy in evidence was claimed to be an exact copy.    If it were not an exact copy it had no value as evidence and was erroneously in the case.    In fact, there was no evidence that it was an exact copy, and the jury might have so found if the court had not instructed them that

it was sufficient if it was shown to be substantially a copy. The party who made it was not sworn as a witness. The only witness on the subject was Mr. Moore, the cashier, who testified:

"I didn't make that copy. I don't know who made it. I didn't testify this morning that it was a copy that I had made. I don't know when it was made. I don't know what kind of a typewriter it was made on. I am sure it is an exact copy. There is no doubt about it."

There is no evidence that he compared the alleged copy with the original, or that he had any reason for believing it to be a copy, except his recollection as to what the original contained. The identity of the paper as an exact copy was not sufficiently shown to permit of its use as evidence. While no objection was made to it on this ground, yet the nature of the testimony together with the instruction of the court, and the fact that the defendant was not permitted to testify that it was not an exact copy, created a situation most prejudicial to his rights.

4. The court refused to submit to the jury defendant's claim that the guaranty was canceled by telegram to the bank July 18, 1922. In view of the undisputed evidence that no such telegram was received by the bank, the court properly refused to submit the question.

No other assignments merit discussion.

The judgment should be reversed and a new trial granted. Defendant should have costs.

SNOW, FELLOWS, and WIEST, JJ., concurred with McDONALD, J.

CLARK, J. On the second point discussed by Mr. Justice McDONALD the trial judge was right. The original of an important letter was lost. Plaintiff had testimony of recollection of its contents. De-

fendant having a copy of the letter, neither producing it, nor excusing his failure to do so, sought to contradict testimony of plaintiff in this regard.    This the trial judge did not permit, holding that in the circumstances it was upon defendant to produce the copy. If the business man of today were asked, What is the best evidence of a lost original letter? his ready response would be: The copy.    And it is.    The conflict in our own and in other cases is due to a refinement of reasoning which refuses to recognize degrees of secondary evidence.    The common-sense rule of the business world should be followed.    If right in this,  the  third  point  discussed  by  Mr.  Justice McDONALD does not amount to reversible error.

The judgment is affirmed.

BIRD, C. J., and SHARPE and STEERE, JJ., concurred with CLARK, J.