WALKER v CAHALAN

Docket No. 78-654. Submitted February 6, 1980, at Detroit.—Decided May 6, 1980. Leave to appeal applied for.

Lee Dell Walker brought in circuit court an action for defamation against William Cahalan, the Wayne County prosecutor, Pete Waldmeir, a newspaper columnist, and The Detroit News. This action arose out of a letter written by defendant Cahalan in 1974 and addressed to the chairman of the Committee on Appropriations of the Michigan House of Representatives, which was then considering a bill to appropriate $25,000 to partially reimburse Walker for the time he spent in prison. The letter recounted the facts surrounding the 1954 murder of a grocery store owner, the nature of Walker's confession to that murder, and the history of the legal proceeding from Walker's conviction by a jury of first-degree murder through the numerous appeals which were affirmed, the eventual granting of a new trial, and the decision by the prosecutor to nolle prosequi the case because of the relocation of the witnesses and the destruction of evidence which had occurred in the intervening 18 years. The letter concluded that any fair-minded person could reach no conclusion other than that Walker murdered the grocery store owner. A copy of this letter was sent by defendant Cahalan to defendant Waldmeir, who incorporated the contents of that letter in his column published by defendant The Detroit News. Following removal of this cause to the Federal court system for consideration of plaintiff's count relative to the violation of his civil rights, which resulted in summary judgment in favor of all defendants on that count, and upon the return of the cause to Wayne Circuit Court,

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Pleading §§ 71 et seq., 229.
  73 Am Jur 2d, Summary Judgment § 27.
[2] 73 Am Jur 2d, Summary Judgment § 27.
[3] 63 Am Jur 2d, Public Officers and Employees § 287 et seq.
[4] 63 Am Jur 2d, Public Officers and Employees § 290.
  50 Am Jur 2d, Libel and Slander §§ 195 et seq., 224.
[5] 73 Am Jur 2d, Summary Judgment §§ 22, 23.

defendant Cahalan moved for summary judgment in circuit court, averring by affidavit that he bore no malice towards Walker and that he believed the statements in the letter to be true. The Wayne Circuit Court, Theodore R. Bohn, J., granted defendant Cahalan's motion for summary judgment, finding that Walker failed to state a claim upon which relief can be granted. Walker appealed, During the pendency of this appeal, Lee Dell Walker died, and Sharon Walker, as personal representative of the estate of Lee Dell Walker, was, by stipulation of the parties, substituted as plaintiff-appellant in the matter. *Held:*

1. A motion for summary judgment based upon the failure to state a claim upon which relief can be granted tests the legal sufficiency of the pleadings. A motion for summary judgment based upon the ground that there is no genuine issue as to any material fact tests the factual support of a claim. A motion for summary judgment brought under the subsection of the court rules dealing with the failure to state a claim but which seeks to test the sufficiency of the facts will be treated as having been brought under the subsection of the rule concerning the absence of any genuine issue as to any material fact, if it is determined that neither party was misled by the failure to cite the proper subsection of the court rules.

2. A motion for summary judgment based upon the absence of any genuine issue as to any material fact may be granted only where it would be impossible for the asserted claim to be established by evidence at trial.

3. Defendant Cahalan, acting in his official capacity as prosecutor, does not have absolute immunity from tort liability, rather, he has only a qualified privilege. Having only a qualified privilege, defendant Cahalan possessed a conditional right to publish otherwise defamatory remarks. That qualified privilege could be overcome by a showing of actual malice by proof that the defamatory statement was made with knowledge that the statement was false or with reckless disregard of whether it was false or not.

4. Since plaintiff failed to offer any proof of actual malice in response to the affidavit of defendant Cahalan which averred that he had no actual malice, the motion for summary judgment was properly granted, not on the basis stated by the trial court, but rather, on the basis that there was no genuine issue as to any material fact.

Affirmed.

1. Motions — Summary Judgment — Cause of Action — Genuine Issue of Material Fact — Pleadings — Prejudice — Court Rules.

A motion for summary judgment based on the failure to state a claim upon which relief can be granted tests only the legal sufficiency of the pleadings, whereas a motion for summary judgment based on the ground that there is no genuine issue as to any fact tests the factual support of a claim; a motion brought under the subsection of the court rules concerning a failure to state a claim but which encompasses a testing of the sufficiency of the facts will be treated as having been brought under the subsection of the court rules concerning a failure to sufficiently plead facts necessary to warrant relief, if neither party was misled by the failure to cite the proper subsection of the court rules (GCR 1963, 117.2[1]; 117.2[3]).

2. Motions — Summary Judgment — Genuine Issue of Material Fact — Court Rules.

A motion made pursuant to the court rule providing for summary judgment where there is no genuine issue as to any material fact may be granted only where it would be impossible for the asserted claim to be supported by evidence at trial (GCR 1963, 117.2[3]).

3. Torts — Governmental Immunity — High Executive Officials — Discretionary Matters — Official Duties — Qualified Privilege.

High level executive governmental officials acting in discretionary matters in the course of their official duties do not have absolute immunity from tort liability, rather, such officials have no more than a qualified privilege.

4. Libel and Slander — Qualified Privilege — Actual Malice — Knowledge of Falsity.

One having a qualified privilege possesses a conditional right to publish otherwise defamatory remarks; however, a showing of actual malice by proof that the defamatory statement was made with knowledge that the statement was false or with reckless disregard of whether it was false or not will overcome that qualified privilege.

5. Judgment — Summary Judgment — Libel and Slander — Genuine Issue of Material Fact — Affidavits — Court Rules.

Summary judgment on the basis that there is no genuine question of material fact is properly granted where a plaintiff, in an

action for defamation arising out of the publication of a prosecutor's statement relative to the history of the plaintiff's criminal conviction and appeals and the prosecutor's belief in the propriety of that conviction and the various affirmances on appeal of that conviction, fails to proffer any evidence of actual malice by the prosecutor in the making of that statement in response to an affidavit submitted by the prosecutor to the effect that the prosecutor bore no actual malice toward the plaintiff and believed the statements made to be true (GCR 1963, 117.2[3]).

*Peter R. Barbara & Associates, P.C.* (by *Peter R. Barbara* and *Frank G. Becker*), for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Rheo C. Marchand* and *Maura D. Corrigan,* Assistants Prosecuting Attorney, for defendant.

Before: N. J. KAUFMAN, P.J., and D. E. HOLBROOK, JR., and R. M. MAHER, JJ.

PER CURIAM. Plaintiff[1] appeals from a summary judgment entered in defendant Cahalan's favor in plaintiff's defamation action. Plaintiff alleged defendant Cahalan defamed him in a September 19, 1974, letter defendant Cahalan addressed to William R. Copeland, Chairman of the House Committee on Appropriations. At the time, that committee was considering Senate Bill No. 1050 which would have authorized an appropriation of $25,000 to partially reimburse plaintiff for the time he spent in state prison "due to a mistake in identity and false testimony". Defendant Cahalan sent copies of

[1] This action was commenced in circuit court by Lee Dell Walker. Subsequent to the filing of this appeal, Lee Dell Walker died. By stipulation of the parties, Sharon Walker, personal representative of the estate of Lee Dell Walker, was substituted as plaintiff-appellant. The term "plaintiff" when used in this opinion will refer to the original plaintiff, Lee Dell Walker, rather than the present plaintiff, the personal representative of his estate.

this letter to the media and they, in turn, related its substance in various articles. It is the dissemination of this letter to the news media and public at large which plaintiff claims to be defamatory.

To better assess the substance of the instant dispute, we must briefly trace the path this litigation has taken through our court system.

On February 17, 1954, a grocer named John Drousiotis was shot during a holdup of his corner grocery store at 6657 Roosevelt in the City of Detroit. The holdup and murder were perpetrated by two men, both of whom escaped from the store after the shooting. The grocer's wife and a young clerk were eyewitnesses to the murder of Drousiotis.

Several weeks later, on March 26, 1954, an attempted street holdup was reported to the Detroit police. The eyewitness description of the escape vehicle led to plaintiff's car. On March 27, 1954, plaintiff was arrested and his car impounded. When the police raised the hood of plaintiff's car to check the registration number, they discovered a .32-caliber revolver wrapped in a blue cloth stuffed over the windshield wiper mechanism. The gun was later identified as the weapon used in the fatal shooting of Drousiotis.

On March 31, 1954, plaintiff confessed to the murder of John Drousiotis in the attempted holdup of his grocery store. This confession was admitted into evidence against the plaintiff at the trial upon that cause held in Detroit Recorder's Court. On June 28, 1954, plaintiff was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, and, on July 12, 1954, he was sentenced to life imprisonment.

A long series of untimely post-conviction appeals followed plaintiff's trial. On September 21, 1961,

plaintiff's delayed motion for a new trial attacking the voluntariness of his confession was denied by the trial court. The Michigan Supreme Court affirmed on December 2, 1963, finding that there was no violation of plaintiff's constitutional rights that would render his confession inadmissible as a matter of law. See *People v Walker,* 371 Mich 599; 124 NW2d 761 (1963). This case again appeared before the Michigan Supreme Court in April, 1964, following the publication of the United States Supreme Court decision in *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964), and the matter was remanded to the trial court for the purpose of making a determination upon a separate record as to the voluntariness of the confession. See *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

Accordingly, a seven-day evidentiary hearing was held. The prosecution, upon whom devolved the burden of proof to show that the confession was voluntary, produced 23 witnesses. As a result, the trial court concluded that plaintiff's confession was voluntarily given. Plaintiff appealed, and this Court affirmed the trial court's conclusion. See *People v Walker,* 6 Mich App 600; 149 NW2d 912 (1967). Thereafter, leave to appeal was denied by the Michigan Supreme Court by its order dated October 4, 1967. See 379 Mich 781 (1967). The United States Supreme Court denied certiorari. See 393 US 1028; 89 S Ct 637; 21 L Ed 2d 572 (1969).

In March, 1972, plaintiff filed a motion for leave to file a delayed motion for a new trial in the trial court. On May 15, 1972, the trial court granted both plaintiff's motion for leave to file a motion for new trial and his motion for new trial. The prosecution thereupon filed a complaint for superin-

tending control, which this Court denied on September 29, 1972.

On December 11, 1972, the prosecution filed a petition for nolle prosequi, setting forth as its reasons for not proceeding with retrial as: the destruction of evidence, the relocation of witnesses, the changes in the controlling law concerning the admissibility of confessions, and, generally, the nearly impossible task of persuasively presenting in court a case that is over 18 years old. On December 12, 1972, an order of nolle prosequi was entered by the trial court.

In December, 1973, a bill was introduced in the Michigan Senate for the purpose of appropriating $25,000 in State of Michigan funds to compensate plaintiff "solely out of humanitarian consideration for the wrong done Lee Dell Walker by the citizens of the State". The bill was passed by the Michigan Senate on July 8, 1974, and was then referred to the House Appropriations Committee. On September 19, 1974, defendant Cahalan sent a letter to the members of the House Committee on Appropriations as well as to members of the news media. It is the dissemination of this letter to the news media and public at large which lies at the basis of plaintiff's defamation action.

In defendant Cahalan's letter, sent nearly one year following the nolle prosequi order, he stated, in pertinent part: "No wrong was done to Lee Dell Walker. There was no mistake in identity. There was no false testimony. Lee Dell Walker was justly convicted of a crime that he committed—the murder of John Drousiotis". Defendant Cahalan also stated that: "In effect, Judge Evans reversed the rulings of another Recorder's Court judge, the Court of Appeals, the Michigan Supreme Court and the United States Supreme Court. His opinion

is contrary to the law as it existed at the time of the trial and as it exists now." Defendant Cahalan further stated: "Lee Dell Walker murdered John Drousiotis. There is no other conclusion that can be reached by any fair-minded person who reviews the evidence in this case." The letter concluded with the following: "The lesson learned is that if a criminal tries long enough and hard enough and goes through enough judges, sooner or later he wil find one sympathetic to his cause. If Lee Dell Walker is to be rewarded with $25,000, give it to him for his persistence. Do not commit the final perversion of stating that a guilty man is innocent."

On September 26, 1974, after defendant Cahalan had sent him a copy of the letter, Detroit News columnist Pete Waldmeir wrote a column which directly incorporated Cahalan's letter. In addition, defendant Cahalan's letter was reported in the Detroit Free Press. On January 22, 1975, plaintiff filed a complaint in the Wayne County Circuit Court against William L. Cahalan, Pete Waldmeir and The Detroit News. On February 26, 1975, plaintiff filed a first amended complaint by right alleging eight counts against all defendants, to-wit: defamation, invasion of privacy, state constitutional grounds, and deprivation of civil rights under the Federal civil rights statute.

On March 4, 1975, defendants removed the action to the United States District Court for the Eastern District of Michigan for a consideration of plaintiff's civil rights claims. In that forum, following a series of motions, plaintiff's case was dismissed in total as to all counts and all defendants. In granting a summary judgment to defendant Cahalan, the District Court found that, in writing this letter and publishing it, the prosecutor-defen-

dant was performing a quasi-judicial function and was thereby acting within the *absolute immunity* of his office.

On October 3, 1975, plaintiff filed an appeal of this dismissal to the United States Court of Appeals for the Sixth Circuit. In *Walker v Cahalan,* 542 F2d 681 (CA 6, 1976), the court affirmed the Federal District Court as to the Federal counts, but reversed the summary judgment as to the prosecutor's liability under the state charges and remanded for a determination of the absence or presence of malice.

An application for a writ of certiorari was filed by defendant Cahalan and denied on April 20, 1977. See 430 US 966; 97 S Ct 1647; 52 L Ed 2d 357 (1977). Thereafter, a motion to remand the matter to the state courts was filed by the plaintiff. After a hearing, the United States District Court entered an order dated June 9, 1977, returning the present cause of action to Wayne County Circuit Court.

The Wayne County Circuit Court granted summary judgment to defendant Cahalan, finding that, in writing and publishing the letter, he was acting within the scope of his official duties, and was, therefore, absolutely privileged. Plaintiff now appeals as of right from this determination, arguing that, on the facts of this case, defendant had, at most, a qualified privilege, and that, since plaintiff's complaint contained averments of malice sufficient to show defendant abused such privilege by publication of the letter, summary judgment was inappropriate.

It is unclear whether defendant's summary judgment motion was brought solely under GCR 1963, 117.2(1), or encompassed 117.2(3) as well. This makes our review on appeal much more difficult.

See Bashara, *The Illusive Summary Judgment Rule: Sifting Through the Maze,* 1976 Det Col L Rev, 397, 400, and *Partrich v Muscat,* 84 Mich App 724, 728-729; 270 NW2d 506 (1978). A motion for summary judgment pursuant to 117.2(1) tests only the legal, not the factual, sufficiency of the pleadings, *Grasser v Fleming,* 74 Mich App 338, 342; 253 NW2d 757 (1977), whereas a motion brought under 117.2(3) is designed to test whether there is factual support for a claim. *Smith v Woronoff,* 75 Mich App 24, 28; 254 NW2d 637 (1977). In *Todd v Biglow,* 51 Mich App 346, 349-350; 214 NW2d 733 (1974), this Court held that when a motion for summary judgment is brought under 117.2(1) when it is really testing the sufficiency of the facts, the motion should proceed on the basis of 117.2(3) as long as neither party is misled. We find this to have been the case herein. Accordingly, we will review plaintiff's claims under 117.2(3).

Before a summary judgment may properly be granted under this sub-section, it must be impossible for the claim asserted to be supported by evidence at trial. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). We must therefore consider whether the plaintiff's claim could be supported by evidence at trial.

We find that the trial court reached the right result, albeit for the wrong reason. Michigan case law does not afford absolute immunity from tort liability to a high level executive official acting in discretionary matters in the course of his official duties. *Timmis v Bennett,* 352 Mich 355, 362; 89 NW2d 748 (1958), *Tocco v Piersante,* 69 Mich App 616, 627-628; 245 NW2d 356 (1976). Such an official is entitled to no more than a qualified privilege, *Tocco, supra,* 635, *Raymond v Croll,* 233 Mich 268; 206 NW 556 (1925).

The instant defendant was found to have such a qualified privilege by the United States Court of Appeals, *supra.* One having a qualified privilege possesses a conditional right to publish otherwise defamatory remarks because the defendant is advancing some interest of social importance. Prosser, Torts (4th ed), § 115, pp 786-787. Where a qualified privilege exists, plaintiff, in order to recover, must affirmatively prove actual malice on the part of the defendant. *Lawrence v Fox,* 357 Mich 134; 97 NW2d 719 (1959), *Peisner v Detroit Free Press, Inc,* 82 Mich App 153, 163-164; 266 NW2d 693 (1978). *New York Times Co v Sullivan,* 376 US 254, 279-280; 84 S Ct 710; 11 L Ed 2d 686; 95 ALR2d 1412 (1964), held that actual malice is established by proof that the defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not".

The central question then becomes whether plaintiff presented sufficient factual allegations of actual malice on the part of the defendant, *i.e.,* did plaintiff affirmatively establish that defendant's statement was made with knowledge that it was false or in reckless disregard of the truth. We have extensively reviewed the materials submitted and found that the only "evidence" plaintiff proffered in opposition to defendant's summary judgment motion consisted of the bare-bones allegations presented in the original complaint. Plaintiff did not present one iota of evidentiary support by way of affidavits or depositions on the issue of actual malice.

After the Sixth Circuit Court of Appeals remanded this case to allow the plaintiff to show actual malice, defendant moved for a summary judgment and averred by affidavit that he bore no

actual malice towards the plaintiff and believed the statements he made were true. It is noteworthy that plaintiff filed no counter-affidavit averring that the defendant had knowledge of the falsity of his statements or acted in reckless disregard of the truth. In *Zimmerman v Stahlin,* 374 Mich 93, 96; 130 NW2d 915 (1964), the Supreme Court stated:

"A defendant's motion for summary judgment, supported by affidavit that the plaintiff's case is a sham and that there are no facts to support the latter's claims, requires plaintiff to submit to the court, by affidavit, deposition, or other proof, a showing of the existence of issues of facts on the merits of the case, failing which, plaintiff's case must fall and defendant is entitled to summary judgment in his favor."

Accord: *Durant v Stahlin,* 375 Mich 628, 638-639, 655-656; 135 NW2d 392 (1965).

In view of the foregoing, we do not find that plaintiff came forward with sufficient evidence to establish the existence of a genuine issue of material fact so as to survive defendant's summary judgment motion.[2] See *Rizzo v Kretschmer, supra,* 372, and *Bob v Holmes,* 78 Mich App 205, 211-212; 259 NW2d 427 (1977).

We can readily understand plaintiff's difficulty in presenting such evidence. Defendant's statement primarily consisted of a recitation of matters of court record. For the most part, defendant traced plaintiff's criminal case through the court system and indicated the various courts that affirmed plaintiff's criminal conviction. We find

---

[2] The recent Supreme Court case of *Steadman v Lapensohn,* 408 Mich 50; 280 NW2d 580 (1980), can be distinguished in that, in that case, the plaintiffs claimed that a number of the published statements were false and supported this claim with deposition testimony and affidavits. In the instant case, however, plaintiff made no such claim nor proffered any such support.

nothing inherently malicious about this practice. Moreover, in the remaining portions of his letter, defendant aligned himself with these various courts and concluded that, since plaintiff had been adjudged guilty, he should not be given the appropriation. On these facts, we fail to see how the trial court might have determined that defendant acted with knowledge of the falsity or reckless disregard for the truth in making these comments. Since plaintiff has not affirmatively shown the existence of a genuine issue of material fact on this question, we affirm the trial court's conclusion.

Affirmed.