NABKEY v BOOTH NEWSPAPERS, INC

Docket No. 71472. Submitted April 10, 1984, at Grand Rapids.—
Decided February 5, 1985. Leave to appeal applied for.

L. Lea Nabkey filed suit against Booth Newspapers, Inc., doing
business as the Grand Rapids Press, and others in Kent Circuit
Court alleging that defendants maliciously, recklessly, and with
intent to injure her made defamatory statements in an article
published in the Grand Rapids Press and that defendants knew
that the facts reported in the article were false, but neverthe-
less published the article. Defendants moved for summary
judgment on the ground that plaintiff was required to prove
malice and there were no disputed facts on the issue of malice,
the information in the article having been taken from the
official reports prepared in connection with the incident. The
trial court, Woodrow A. Yared, J., granted defendants' motion,
finding that the case involved a matter of general public
interest and that therefore the press had a qualified privilege to
report on the matter and plaintiff was obligated to prove actual
malice on the part of the defendant. The court granted sum-
mary judgment in favor of defendants because plaintiff had
failed to allege any facts to support her claim that defendants
had published the article with knowledge of its falsity or with
reckless disregard for the truth. Plaintiff appealed. *Held:*

1. The trial court improperly ruled, on the record before it,
that defendants had a qualified privilege to report the matters
contained in the article. Michigan extends a qualified privilege
to media defendants to report matters of legitimate public
interest, not matters which are merely interesting to the pub-
lic. The report of plaintiff's alleged activity in this case did not
contribute to the public's interest in reducing or detecting
crime, but merely provided interesting or amusing reading for

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Libel and Slander § 251 *et seq.*
What constitutes actual malice, within Federal constitutional rule
requiring public officials and public figures to show actual malice.
20 ALR3d 988.
[2, 3] 50 Am Jur 2d, Libel and Slander §§ 195-198.
[3] 50 Am Jur 2d, Libel and Slander §§ 256 *et seq.,* 310.

the public. Such reporting is not entitled to the qualified privilege to publish.

2. Defendants may be entitled to a qualified privilege to fairly and accurately report judicial proceedings. The Court is unable to determine from the author's affidavit or the record made at the hearing for summary judgment whether or not the official records alluded to by defendants are within this privilege. The trial court therefore improperly granted summary judgment in favor of defendants based on the record before it.

Reversed and remanded for further proceedings.

1. LIBEL AND SLANDER — CONSTITUTIONAL LAW — PRIVILEGE.

There is no federal constitutional privilege to report on matters of public interest; it is for the states to define the scope of their defamation laws where private-figure plaintiffs are involved, subject only to the constitutional limitations that (1) liability may not be imposed against media defendants without fault and (2) punitive damages may not be imposed against media defendants unless actual malice, *i.e.,* knowledge that a statement was false or reckless disregard of whether it was false, is shown.

2. LIBEL AND SLANDER — MEDIA DEFENDANTS — QUALIFIED PRIVILEGE.

Media defendants, such as newspapers, enjoy a qualified privilege to report on matters which advance an important societal or public interest, but no qualified privilege to report on every matter which may be of interest to the public; the privilege extends only so far as the need for it applies.

3. LIBEL AND SLANDER — NEWSPAPERS — JUDICIAL PROCEEDINGS — QUALIFIED PRIVILEGE.

Newspapers have a statutory qualified privilege to accurately and fairly report judicial proceedings (MCL 600.2911[3]; MSA 27A.2911[3]).

L. Lea Nabkey, *in propria persona.*

*Waters, Lesniak & Willey, P.C.* (by *Larry C. Willey),* for defendants.

Before: R. M. MAHER, P.J., and WAHLS and J. A. HATHAWAY,* JJ.

PER CURIAM. Plaintiff appeals as of right from

---

* Circuit judge, sitting on the Court of Appeals by assignment.

an order entered by the trial court, granting defendants' motion for summary judgment pursuant to GCR 1963, 117.2(3).

Plaintiff filed a complaint on September 27, 1982, alleging that defendants maliciously, recklessly, and with intent to injure plaintiff made defamatory statements in an article published on September 30, 1981, in the Grand Rapids Press. The article reported that plaintiff had been arrested and arraigned "after she allegedly stole court records and threatened a Grand Rapids city attorney's investigator with a pen". It further stated that plaintiff had pled not guilty to charges of assault and battery, creating a disturbance, and larceny of court records. Finally, the article contained a description of the alleged crime given by police officers and the city attorney's investigator who had allegedly been threatened with the pen. Plaintiff's complaint alleged that defendants knew that the facts reported in the article were false, but nevertheless published the article.

Defendants moved for summary judgment pursuant to GCR 1963, 117.2(3) on the ground that plaintiff was required to prove malice and there were no disputed facts on the issue of malice. An affidavit by the author of the article was attached to the motion; the affidavit stated that the information contained in the article was obtained from "the official reports prepared in connection with the incident".

After a hearing, the trial court granted defendants' motion. In its opinion, the court found that this case involved a matter of general public interest: "The facts clearly show that the charges against plaintiff occurred in the office of the 61st District Court involving court business. The whole incident was of a public nature and interest". The court then concluded that where a matter of pub-

lic interest was involved the press had a qualified privilege to report on the matter and a plaintiff was therefore obligated to prove actual malice on the part of the defendant. Since plaintiff had failed to allege any facts to support her claim that defendants had published the article with knowledge of its falsity or with reckless disregard for the truth, the court then granted summary judgment in favor of defendants.

On appeal, plaintiff argues that the trial court improperly granted summary judgment before she had had an opportunity to complete discovery and that, had she been able to complete discovery, she would have been able to present facts in support of her claim of malice. We find it unnecessary to reach plaintiff's argument, however, because we find that the trial court improperly ruled, on the record before it, that defendants had a qualified privilege to report the matters contained in the article.

Another panel of this Court recently examined the question of when a media defendant, such as a newspaper, possesses a qualified privilege to report the fact of a private figure's[1] arrest and the alleged details of the crime charged. In *Rouch v Enquirer & News of Battle Creek, Michigan,* 137 Mich App 39; 357 NW2d 794 (1984), the defendant reported that the plaintiff had been arrested for raping the 17-year-old babysitter of his children, that the plaintiff had cut off the victim's clothes with a knife, and that the charge against the plaintiff had been authorized by the prosecutor's office. Those statements were later shown to have been substantially false. The trial court granted summary judgment in favor of the defendant because Michigan

---

[1] Defendants do not contend (and did not contend in the trial court) that plaintiff is a public figure. We will, therefore, assume for purposes of this opinion that plaintiff is a private figure.

law extends to media defendants a qualified privilege to report on matters of general public interest, which included the report of an arrest and its accompanying details.

This Court reversed the decision of the trial court and held that the story reported by the defendant was not protected by a qualified privilege. The *Rouch* Court noted first that such a privilege was not constitutionally mandated, as the United States Supreme Court had explicitly left it to the states to define the scope of their defamation laws where private figure plaintiffs are involved, provided only that liability could not be imposed against media defendants absent fault and that punitive damages could not be imposed against media defendants unless *New York Times*[2] actual malice is proven. *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974).

The *Rouch* Court then examined the two qualified privileges asserted by the defendant: the qualified privilege for accurately and fairly reporting judicial proceedings as provided by MCL 600.2911(3); MSA 27A.2911(3) and the privilege in Michigan to report matters in the public interest, as set forth in *Lawrence v Fox,* 357 Mich 134, 142; 97 NW2d 719 (1959).[3] However, instead of agreeing with the defendant and the trial court, this Court rejected the idea that Michigan recognizes a qualified privilege for reporting matters of *general* public interest:

"Relying on *Schultz v Newsweek, Inc,* 668 F2d 911, 918 (CA 6, 1981), which construed Michigan law, defen-

[2] In *New York Times Co v Sullivan,* 376 US 254, 279-280; 84 S Ct 710; 11 L Ed 2d 686 (1964), the Supreme Court defined "actual malice" as knowledge that the statement was false or reckless disregard of whether it was false.

[3] The latter privilege is asserted in this case by defendant and was found applicable by the trial court.

dant argues that the courts in Michigan require non-public-figure plaintiffs to prove that media defendants who have published defamatory news stories of general public interest acted with actual malice: 'The privilege attaches to reports on matters of general public interest even though the plaintiff is a private individual.' In our opinion, *Schultz* is distinguishable. The sole state court decision of any precedential value cited by the *Schultz* Court as support for the proposition that media defendants in Michigan enjoy a qualified privilege to report on matters of general public interest is *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978). In *Peisner,* this Court quoted extensively from *Lawrence v Fox, supra,* as to the nature of the Michigan qualified privilege to report on matters in the public interest. There, the Supreme Court explicitly relied upon 3 Restatement Torts, § 619, comment (a), in holding that whether or not a qualified privilege exists is a question of law to to be resolved under the rules set forth in §§ 585-599 of the Restatement. 357 Mich 134, 140-141. 3 Restatement Torts, § 598 provides:

" 'An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

" '(a) there is information that affects a sufficiently important public interest, and

" '(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.'

"Comment *(b)* to this section provides in pertinent part:

" 'The rule stated in this Section is applicable when any recognized interest of the public is in danger, including the interest in the prevention of crime and the apprehension of criminals, the interest in the honest discharge of their duties by public officers, and the interest in obtaining legislative relief from socially recognized evils.'

"As the Restatement implies, there is an important distinction between matters which truly promote the public interest and matters which are merely interesting to the public. Under the Restatement formulation, media defendants enjoy a qualified privilege to report on matters which advance an important societal or

public interest, not a qualified privilege to report on every matter which may be of interest to the public. See, also, *Timmis v Bennett,* 352 Mich 355, 368-369; 89 NW2d 748 (1958); *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 619; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983); *Walker v Cahalan,* 97 Mich App 346, 356; 296 NW2d 18 (1980), *rev'd on other grounds* 411 Mich 857; 306 NW2d 99 (1981), *cert den* 454 US 1032; 102 S Ct 570; 70 L Ed 2d 476 (1981). A privilege extends only so far as the reason for it applies. *Timmis, supra.* Hence, '[t]he public needs to know what goes on in court but does not need to know that A has slandered or libeled B outside of court'. *Pittsburgh Courier Publishing Co, Inc v Lubore,* 91 US App DC 311; 200 F2d 355 (1952). See, also, *Clark v American Broadcasting Companies, Inc,* 684 F2d 1208 (CA 6, 1982), *cert den* 460 US 1040; 103 S Ct 1433; 75 L Ed 2d 792 (1983). In other words, a matter is not necessarily privileged merely because it in some way relates to the public interest. *Rancho La Costa, Inc v Superior Court of Los Angeles County,* 106 Cal App 3d 646, 666; 165 Cal Rptr 347, 360 (1980), *app dis* 450 US 902; 101 S Ct 1336; 67 L Ed 2d 326 (1981)." (Footnote omitted.) 137 Mich App 50-52.

We agree with the Court's holding in *Rouch* that Michigan extends a qualified privilege to media defendants to report only matters of legitimate public interest, rather than to report matters which are merely interesting to the public. In this case, the report of plaintiff's alleged activity did not contribute to the public's interest in reducing or detecting crime, but merely provided interesting or amusing reading for the public. Such a benefit to the public does not, by itself, offset the potential harm to a plaintiff's reputation should the story prove to be false.

We note, however, that the affidavit submitted by the author of the article, in this case, states that the information contained in the article was obtained from "the official reports prepared in connection with the incident". The trial court, in

granting summary judgment, focused on the fact that the alleged crime occurred "in the office of the 61st District Court involving court business". Both statements indicate that the court and defendants may have been attempting to rely upon the second qualified privilege asserted in *Rouch:* the qualified privilege to fairly and accurately report judicial proceedings, as provided by MCL 600.2911(3); MSA 27A.2911(3).

MCL 600.2911(3); MSA 27A.2911(3) states:

"No damages shall be awarded in any libel action brought against a reporter, editor, publisher, or proprietor of a newspaper for the publication in ‘it of a fair and true report of any public and official proceeding, or for any heading of the report which is a fair and true headnote of the article published. This privilege shall not apply to a libel which is contained in any matter added by any person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding which was not a part of the public and official proceeding."

The terms "public and official proceeding" are described more fully in 3 Restatement Torts, 2d, § 611, p 297:

"Report of Official Proceeding or Public Meeting. The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."

Comment h to this section provides:

"An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime

made by the officer in making or returning the arrest is therefore within the privilege covered by this Section. On the other hand statements made by the police or by the complainant or other witnesses or by the prosecuting attorney as to the facts of the case or the evidence expected to be given are not yet part of the judicial proceeding or of the arrest itself and are not privileged under this Section."

Under this analysis, defendants may be entitled to a qualified privilege depending on the nature of the "official reports" relied upon by them. We refer the parties to this Court's opinion in *Rouch* for a full discussion of the type of report covered by the "official proceedings" privilege. We are unable, however, to determine from the author's affidavit or the record made at the hearing for summary judgment whether or not the official records alluded to by defendants are within this privilege. The trial court therefore improperly granted summary judgment in favor of defendants based on the record before it.

Reversed and remanded for proceedings consistent with this opinion.