**Carl M. PESTA and Penny M. Pesta, Plaintiffs,**

v.

**CBS, INC., Ed Bradley, Morley Safer, Mike Wallace, Harry Reasoner, Monika Jensen, John Doe, Mary Roe, and Storer Communications, Inc., Defendants.**

No. 84–CV–5124–DT.

United States District Court, E.D. Michigan, S.D.

Nov. 24, 1986.

Richard E. Rassel, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This defamation action arises from the broadcast of a segment of the CBS program "60 Minutes," entitled "Tragic Assumptions." The segment was aired on October 30, 1983. On October 25, 1984, Plaintiffs commenced action in Macomb County Circuit Court, and the action was subsequently removed to this Court based on diversity jurisdiction. Plaintiff Carl M. Pesta seeks actual and compensatory damages. His wife, Penny M. Pesta, asserts a derivative claim for loss of consortium.[1]

This matter is presently before the Court on four motions. Plaintiff brings two motions in limine, one seeking a ruling that Defendants did not have a qualified privilege to publish the two allegedly defamatory statements upon which this action is based [2] and the other seeking a ruling that Defendants may not produce evidence of previous malpractice actions against Plaintiff at trial. Also before the Court are Defendants' motion for summary judgment and Defendants' motion to strike Plaintiff's supplemental answers to certain interrogatories. Because resolution of Defendants' motion for summary judgment may obviate the need to consider Defendants' motion to strike answers to interrogatories and Plaintiff's motion in limine concerning evidence of previous malpractice claims, the Court will defer discussions of those motions. Plaintiff's motion in limine regarding the existence of a qualified privilege, however, goes to Plaintiff's burden of proof at trial and, accordingly, is appropriately considered before addressing the merits of De-

Balfour Peisner, Southfield, Mich., for plaintiffs.

1. Unless otherwise stated, the Court will refer to Carl M. Pesta as "Plaintiff" and Penny M. Pesta by name.

2. Originally, Plaintiff alleged that six statements contained in the broadcast were defamatory. In a Memorandum Opinion dated June 28, 1985, however, this Court held that only two of the six statements were reasonably capable of defamatory interpretation as to Plaintiff. Accordingly, Defendants were granted summary judgment with respect to the four non-defamatory statements.

fendants' motion for summary judgment.[3]

*Background Facts*

In late December, 1972, sixteen-year-old John Haisenleder became ill with the flu. Because of the severity of his symptoms, John's mother contacted their family doctor. The family doctor suspected that John was suffering from Reye's Syndrome, the symptoms of which include vomiting, disorientation, and combative, or even violent, behavior. The family doctor instructed Mrs. Haisenleder to take her son to St. John's Hospital, where he would meet them.

Mrs. Haisenleder called the St. Clair Shores police for assistance. When they arrived, the police officers suspected that John was on drugs. Despite Mrs. Haisenleder's pleas to take her son to St. John's Hospital where the family doctor was waiting, the police officers insisted on taking John to Harrison Hospital which handled drug cases. The doctors at Harrison Hospital, including Plaintiff, could not diagnose John's illness. John died on January 2, 1973, purportedly of Reye's Syndrome.

CBS reported the story of John's death on the October 30, 1983 broadcast of "60 Minutes." Defendant Bradley introduced the segment as "a story about what happened when two policemen made a tragic assumption about what was wrong with a young man they were called to help during a medical emergency, and about what happened when a doctor in an emergency room went along with what turned out to be a misdiagnosis." (Transcript of 60 MINUTES, Vol. XVI, No. 7, Sunday, Oct. 30, 1983 [hereinafter "Transcript"], p. 11) Two statements made during the course of that broadcast are at issue in this case. The first statement at issue was made by Dr. Thomas Shope, who opined that the doctors at Harrison Hospital made a "critical mistake" by failing to order liver func-

tion studies on John. (Transcript, pp. 15–16) The second statement at issue was made by Defendant Bradley, indicating that John had an 80–90% chance of recovery when he was first brought to Harrison Hospital. (Transcript, p. 13) Plaintiff alleges that these statements, which he claims were false, injured him both monetarily and professionally.

*Qualified Privilege*

■ Plaintiff moves in limine for a ruling by this Court that Defendants did not have a qualified privilege to publish the matters in issue and, therefore, that Plaintiff need only prove common law negligence in order to prevail at trial.[4] As Defendants correctly point out, the Court addressed the issue of a qualified privilege in its Memorandum Opinion dated June 27, 1986. In that opinion, the Court stated:

> Although the parties have not specifically addressed the issue, they *agree* that the appropriate standard of liability under Michigan law for defamation by the media of private persons concerning matters of public concern is that of "actual malice," as set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1974); *Gaynes v. Allen,* 128 Mich.App. 42, 47 [339 N.W.2d 678] (1983). In order for the Plaintiff, Carl Pesta, to prevail on his defamation claim, he must prove by clear and convincing evidence that Defendants broadcast the defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times v. Sullivan,* 376 U.S. at 271–72 [84 S.Ct. at 721–22]; *Gaynes v. Allen,* 128 Mich.App. at 45 [339 N.W.2d 678].

Mem.Op. at 2–3 (emphasis added). Defendants argue that Plaintiff's concession that actual malice is the appropriate standard of liability, amounts to a judicial admission

---

**3.** Issues relating to the existence of a qualified privilege are raised by both Plaintiff's motion in limine and Defendants' motion for summary judgment.

**4.** Where a qualified privilege does *not* attach a "plaintiff need only show that defendant was

negligent in printing the defamatory matter in order for plaintiff to recover his actual damages." *Rouch v. Enquirer & News,* 137 Mich. App. 39, 59, 357 N.W.2d 794 (1984), *leave to appeal granted,* 422 Mich. 937 (1985).

and Plaintiffs are estopped from asserting a contrary position at this stage of the litigation. Plaintiff denies that any such concession was made. Moreover, Plaintiff contends that the issue was not properly resolved in the Court's June 27th Memorandum Opinion because the parties did not squarely address the issue in either their briefs or at oral arguments. Plaintiff suggests that the Court's statements were merely gratuitous, amounting to dicta at best. The Court disagrees.

In its June 27th Memorandum Opinion, the Court denied Plaintiffs' motion to compel answers to interrogatories, in which Plaintiff sought to discover the names of medical experts, if any, employed at CBS presently and/or at the time of the broadcast in question. Plaintiff argued that this information was relevant to establishing that Defendants acted with reckless disregard for the truth in publishing the allegedly defamatory statements which are the subject of this litigation. At oral arguments, Plaintiff specifically stated, through counsel, that the motion was premised on the theory that failure to investigate amounted to reckless disregard for the truth.[5] In asserting this argument, Plaintiffs clearly accepted "actual malice" as the appropriate standard for liability inasmuch as the issue of whether a defendant published the defamatory statement with reckless disregard for the truth arises only where a plaintiff is required to prove actual malice. See Rouch v. Enquirer & News, 137 Mich.App. 39, 59, 357 N.W.2d 794 (1984), leave to appeal granted, 422 Mich. 937 (1985). Moreover, a plaintiff does not bear the burden of proving actual malice unless the defendant enjoys a qualified privilege with respect to publishing the allegedly defamatory matter. Id. Thus, Plaintiff has impliedly admitted that Defendants had a qualified privilege to publish the statements at issue in this case. Having taken this position, Plaintiff is estopped from asserting a contrary position

in his motion in limine. See Mertz v. Mertz, 311 Mich. 46, 56–57, 18 N.W.2d 271 (1945).

■ Even if the Court were not persuaded that Plaintiff's admission at oral arguments constituted an admission, the Court would conclude that Defendants had a qualified privilege to publish the statements in question. The parties agree that in Michigan, a media defendant enjoys a qualified privilege of "fair comment" to report on matters of public concern. See, e.g., Lawrence v. Fox, 357 Mich. 134, 142, 97 N.W.2d 719 (1959); Kurz v. Evening News Ass'n, 144 Mich.App. 205, 209, 375 N.W.2d 391 (1985). This privilege applies in libel actions brought by both public persons and private individuals. See Kurz, 144 Mich.App. at 210, 375 N.W.2d 391; Peisner v. Detroit Free Press, Inc., 82 Mich.App. 153, 161, 266 N.W.2d 693 (1978), aff'd, 421 Mich. 125, 364 N.W.2d 600 (1984). Moreover, the privilege attaches irrespective of any federal constitutional privilege which the media defendant may also enjoy. Gaynes v. Allen, 128 Mich.App. 42, 45–47, 339 N.W.2d 678 (1983); see also Schultz v. Reader's Digest Ass'n, 468 F.Supp., 551, 560–61 (E.D.Mich.1979).

In this case, Plaintiff draws a distinction between reports on matters of public concern and reports on matters which are "merely interesting to the public." In this regard, Plaintiff argues that reports on matters of the latter type are not protected by the common law qualified privilege. Plaintiff relies on the Michigan Court of Appeals decisions in Rouch, supra, and Nabkey v. Booth Newspapers, 140 Mich. App. 507, 364 N.W.2d 363 (1985). In response, Defendants argue that reports relating to health care delivery necessarily involve matters of public concern and, thus, are the subject of a qualified privilege. Defendants cite three court of appeals decisions in support of this proposition: Gaynes v. Allen, supra; Bortell v. Citi-

---

5. Prior to issuing its June 27th Memorandum Opinion, the Court reviewed the record of the oral arguments on Plaintiff's motion in order to assure itself that such an admission was in fact

made. Inasmuch as Plaintiffs admitted that they were proceeding under the actual malice standard, the Court denied their motion to compel answers to their interrogatories.

zens for Better Care Institute, Inc., 6 Med.L.Rptr. 1797 (Mich.App.1980); and Mehelas v. Arends, No. 80807 (Mich.App. Oct. 24, 1985). Having carefully reviewed these decisions, the Court agrees with Defendants.

In each of the cases cited by Defendants, the Michigan Court of Appeals held that a media defendant enjoys a qualified privilege to report on matters relating to the quality and delivery of health care services. In Gaynes, for example, the plaintiff brought a libel action against the publisher of a professional newsletter based on the publication of statements concerning the plaintiff's competency as an optometrist. In holding that the defendants enjoyed a qualified privilege with respect to the publication in issue, the court in Gaynes stated:

In this case, the trial court ruled, and we agreed, that defendants had a qualified privilege to publish the article which prompted plaintiff to file this lawsuit. The purpose of defendant Physicians Education Network, Inc., is to disseminate information as to matters of health care. The published information related to treatment rendered by plaintiff optometrist, who allegedly failed to recognize a medical problem beyond his level of competence. Ophthalmologists and the general public have a vital interest in the proper delivery of eye care services and in being informed of the level of competence of health care deliverers. The issue to which the allegedly defamatory article addressed itself is one deserving of robust public debate. We hold the published information was a matter of legitimate public concern and that defendants had a qualified privilege to publish it.

128 Mich.App. at 48–49, 339 N.W.2d 678. Similarly, Mehelas involved the publication of statements which critized plaintiff's competency as a physician. In holding that the defendant enjoyed a qualified privilege with respect to the allegedly defamatory statements, the Mehelas court stated: "[W]e feel that the quality of health care, whether private or public, is a matter of legitimate public concern." Slip. op. at 4. Finally, in Bortell the court held that the defendant had a qualified privilege to report on matters concerning a local nursing home because the operation of the nursing home was a matter of public interest. 6 Med.L.Rptr. at 1799.

Plaintiff correctly points out that the court in Rouch drew a distinction "between matters which truly promote public interest and matters which are merely interesting to the public." 137 Mich.App. at 51, 357 N.W.2d 794. Moreover, the court in Rouch held that a qualified privilege does not attach where a media defendant reports on matters which are "merely interesting to the public." Id. at 52, 357 N.W.2d 794. Rouch was followed by another panel of the court of appeals in Nabkey v. Booth Newspapers, supra. Plaintiff argues that the matters at issue in the present case were "merely interesting to the public" and, therefore, Defendants had no qualified privilege under the authority of Rouch and Nabkey.

The Court rejects Plaintiff's argument for several reasons. First, the Court notes that Rouch and Nabkey are factually distinguishable from this case because those cases involved detailed reports regarding isolated instances of criminal activity, which later proved to be false. The courts in those cases were unwilling to conclude that the public's interest in the detection and prevention of criminal activity was promoted by the reporting of isolated criminal events. Nabkey, 140 Mich.App. at 513, 364 N.W.2d 363; Rouch, 137 Mich.App. at 58, 357 N.W.2d 794. In contrast, the case before the Court involves reports on the quality of health care services, which the Michigan Court of Appeals has consistently recognized as a matter of legitimate public concern.[6] See Gaynes, supra; Mehelas,

---

6. At oral arguments, Plaintiff argued that the broadcast in question focused on an isolated instance of health care delivery and, therefore, the rationale of Rouch and Nabkey control. The Court notes, however, that Gaynes, Mehelas and Bortel each involved reports of isolated instances and the Courts nevertheless concluded that

*supra; Bortel, supra.* Second, another panel of the Michigan Court of Appeals has recently criticized *Rouch:*

> We are not convinced that the distinction referred to in the quoted statement is fully supported by the cases cited in *Rouch.* In fact, this formulation seems to be in conflict with the Supreme Court's broad view of the qualified privilege, as enunciated in *Lawrence, supra.* Reports of criminal charges and accusations are indeed matters in the public interest. If *Rouch* does apply, we are satisfied that publication does promote the public interest. This was not a gossip column article. Consequently, we decline to find that *Rouch* defeats defendants' qualified privilege to publish the article that is the subject of this case.

*Kurz v. Evening News Ass'n,* 144 Mich. App. at 212, 375 N.W.2d 391. Finally, the Court notes that leave to appeal has been granted in *Rouch* and the Michigan Supreme Court has stayed decision on an application for leave to appeal in *Nabkey* pending its decision in *Rouch. See Dougherty v. Capitol Cities Communications, Inc.,* 631 F.Supp. 1566, 1570 (E.D.Mich. 1986) (Gilmore, J.). Thus, the Court is not persuaded that it should disregard *Gaynes, Bortell,* and *Mehelas* in favor of *Rouch,* the continued validity of which appears questionable.

For all of the foregoing reasons, the Court concludes that Defendants had a qualified privilege to publish the allegedly defamatory statements at issue in this case. Because the Court has concluded that the Defendants enjoyed this privilege as a matter of state law, the Court need not consider whether Defendants also enjoyed a qualified privilege as a matter of federal constitutional law. Resolution of that question would not enhance or detract from Plaintiff's burden of proof at trial.

*Summary Judgment*

Inasmuch as Defendants had a qualified privilege to publish the matters in issue, Plaintiff bears the burden of proving by clear and convincing evidence that Defend-

the reports concerned matters of legitimate public concern.

ants acted with actual malice in publishing the allegedly defamatory statements in order to prevail at trial. *See, e.g., Kurz,* 144 Mich.App. at 212–13, 375 N.W.2d 391. Defendants argue that Plaintiff will be unable to prove actual malice and, accordingly, Defendants are entitled to judgment as a matter of law.

Before addressing the parties' competing arguments, the Court considers it appropriate to discuss the standards which this Court must apply in ruling on Defendants' motion. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to judgment in his favor." *United States v. Article of Device,* 527 F.2d 1008, 1011 (6th Cir.1975). The moving party, however, does *not* bear the burden of negating the essential elements of his opponent's claim. As the Supreme Court recently stated in *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [W]e do not think that … *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970), … should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by "showing"— that is, pointing out to the District Court—that there is an absence of evi-

dence to support the nonmoving party's case.

*Id.* —— U.S. at ——, 106 S.Ct. at 2554–55.

If the movant establishes by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, Rule 56(e) requires that the opponent produce by affidavit or otherwise "specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1967); *see also Celotex,* —— U.S. at ——, 106 S.Ct. at 2552–53. Thus, the nonmoving party must produce "sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Cities Services Co.,* 391 U.S. at 288–89, 88 S.Ct. at 1592–93.

Finally, the Supreme Court has recently considered the appropriate standard for ruling on a motion for summary judgment in libel actions where the plaintiff is required to prove actual malice by clear and convincing evidence. In *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court held:

> In sum, a court ruling on a motion for summary judgment must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity.

*Id.* —— U.S. at ——, 106 S.Ct at 2515–16. With respect to a non-moving plaintiff's burden under Rule 56(e), the Court further stated that the plaintiff may not "defeat a defendant's properly supported motion for summary judgment ... without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the de-

fendant's denial ... of legal malice." *Id.* at ——, 106 S.Ct. at 2513–14. "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at ——, 106 S.Ct. at 2515–16.

As already stated, Defendants argue that Plaintiffs will be unable to prove actual malice, an essential element of their claim. Inasmuch as Plaintiff bases his claim on two statements made during the broadcast in question, the Court will consider the merits of Defendants' motion as to each statement. Furthermore, for purposes of this motion, the Court assumes that Plaintiff could prove the essential elements of his claim other than the element of actual malice.[7]

*"Critical Mistake"*

■ Plaintiff bases his claim, in part, on the following statement made by Dr. Shope, a medical expert who was interviewed during the broadcast in question:

> BRADLEY: The liver biopsy certainly wasn't done.
>
> DR. SHOPE: No, the liver biopsy wasn't done. And I wouldn't expect that to be done on an emergency basis. But the blood ammonia—I didn't see that be ordered, and I didn't see the—the liver function studies be ordered.
>
> BRADLEY: Is that a critical mistake?
>
> DR. SHOPE: Well, I think it is.

(Transcript, pp. 15–16) Plaintiff takes the position that this statement implies a false fact, that is, that he did not order liver function studies on John. Plaintiff contends that liver studies were in fact ordered as established by the following portion of the Shope interview which was deleted from the broadcast:

> DR. SHOPE: .... Now there was something ordered that was never done. There was an SMA–12 written, now that's a series of blood chemistries.

---

7. In addition to actual malice, Plaintiff must also prove that the statements in question were false and that the statements concerned Plain-

tiff. *Kurz,* 144 Mich.App. at 209, 375 N.W.2d 391.

According to Plaintiff, an SMA–12 includes liver function studies. Although the record includes no evidence regarding the meaning of "SMA–12," Defendants apparently admit that Plaintiff is correct. Plaintiff, therefore, argues that Dr. Shope's statement of opinion is actionable because it implies false facts as the basis of his opinion. *See Redco Corp. v. CBS*, 758 F.2d 970, 11 Media L.Rep. 1861, 1862 (3d Cir. 1985); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied sub nom., Hotcher v. Doubleday & Co.*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); *Kapiloff v. Dunn*, 27 Md.App. 514, 531–532, 343 A.2d 251, 263 (1975), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976).

Assuming Dr. Shope's statement of opinion includes an implied assertion of false fact, Defendants' broadcast is nevertheless privileged unless Plaintiff can prove that Defendants acted with actual malice. In his complaint, Plaintiff makes the following allegation with respect to actual malice:

> That Defendant CBS, and/or Ed Bradley, and/or Monica Jensen, and others connected with producing the show, knew that the information supplied said Dr. Shope upon which he based his information was incomplete and falsified, in that they withheld certain critical information from Dr. Shope, in order to obtain from him the sensational opinion that Plaintiff, Carl M. Pesta had made a "critical mistake" in the treatment of said John Haisenleder. That the said withholding of the critical information by Defendants in order to obtain said opinion, constituted actual malice in that the actions of Defendants were made with full knowledge that the information upon which said opinion was obtained was actually false, because it was incomplete.

(Second Amended Complaint ¶ 7)

Defendants contend that there is no evidence to support Plaintiff's allegation with respect to actual malice. In support of their position, Defendants cite the deposition testimony of Defendant Jensen. Specifically, Defendants refer the Court to those portions of the Jensen deposition in which Monika Jensen, the producer of the broadcast, states that she provided Dr. Shope with what she believed were the entire medical records of Harrison Hospital concerning John Haisenleder's death. (Jensen Deposition, pp. 18, 31). According to Defendant Jensen, all medical records which were available were given to Dr. Shope prior to his being interviewed for the broadcast. (Jensen Deposition, pp. 30–31) Defendants argue that Defendant Jensen's undisputed testimony negates Plaintiff's claim that Defendants acted with actual malice because they supplied Dr. Shope with false and incomplete information in order to obtain his comment that the doctors had made "a critical mistake."

Plaintiff has not produced any evidence in response to this motion which would even suggest Defendants knew that the medical records provided to Dr. Shope were incomplete and/or falsified or that they acted with reckless disregard with respect to the same. Moreover, during oral arguments, Plaintiff's counsel took the position that he need not produce any such evidence in order to withstand Defendants' properly supported motion for summary judgment. In light of the undisputed record, Defendants are entitled to summary judgment on this aspect of Plaintiff's claim.[8]

---

8. Although not alleged in Plaintiff's Second Amended Complaint, Plaintiff contends that actual malice can be inferred from the fact that Defendants deleted the portion of the Shope interview regarding the SMA–12 test. Plaintiff asserts two theories in support of this contention. Plaintiff first argues that the jury could infer Defendants knew the implied assertion of fact was false because they "deliberately" deleted Dr. Shope's reference to the SMA–12 test. The undisputed evidence, however, establishes that Defendant Jensen, who was responsible for cutting the film, did not know what is included in an SMA–12 test. (Jensen Deposition, pp. 32, 34) Although Plaintiff's counsel alluded to expert testimony which would tend to discredit Jensen, no such evidence was produced by Plaintiff in response to this motion. Apparently assuming that Defendant Jensen did not know that a liver function study is part of an SMA–12 test, Plaintiff next argues that Defendants' failure to investigate in this regard constitutes reckless disregard for the truth. The Court considered and rejected this argument in its Memo-

### *"80–90% Chance of Recovery"*

Plaintiff's defamation claim is also based on the following statement made by Defendant Bradley:

> BRADLEY: Convinced that her son need not have died and that his last hours were spent in unnecessary agony, Mrs. Haisenleder checked with the experts. After she was told that John had an 80–90% chance of recovery when he was first brought to Harrison, she filed suit against Policemen Donald Reeder and Edward Stak, against Dr. Berg and against Harrison Community Hospital. On the advice of her attorney, she accepted an $80,000 settlement from the hospital.

(Transcript, p. 13)[9] Plaintiff contends that this statement is false in two respects. First, Plaintiff contends that John did not have an 80–90% chance of recovery when he arrived at Harrison Hospital. Second, Plaintiff contends that Mrs. Haisenleder learned that her son had an 80–90% chance of recovery from her attorney, not "experts."

Assuming Bradley's statement was false, the issue before the Court is whether Plaintiff can establish that Defendants acted with actual malice in broadcasting the allegedly false statement.[10] Defendants argue that the deposition testimony of Defendants Jensen and Bradley, as well as the deposition testimony of Colleen Haisenleder,[11] preclude a finding of actual malice. Both Defendants Bradley and Jensen testified that Mrs. Haisenleder told them that experts told her her son had an 80–90% chance of survival when he was first brought to Harrison Hospital. (Jensen Deposition at 37; Bradley Deposition 20) In addition, Defendant Bradley stated that he believed the statistics which Mrs. Haisenleder quoted. (Bradley Deposition at 34) Defendant Jensen also testified that she confirmed Mrs. Haisenleder's statement by reviewing the trial testimony of Dr. Baublis, who testified on behalf of Mrs. Haisenleder in the lawsuit against Dr. Berg. (Jensen Deposition, pp. 38, 41) Finally, to further support their argument, Defendants refer the Court to the deposition of Colleen Haisenleder who admits telling "someone" at "60 Minutes" that according to experts, her son had an 80–90% recovery when he was first admitted at Harrison Hospital. (Haisenleder Deposition at 6–7).

Plaintiff has not produced any evidence which would tend to contradict the testimony summarized above. During oral arguments on this motion, Plaintiff appeared to take the position that actual malice could be inferred from Defendants' failure to investigate the accuracy of Mrs. Haisenled-

---

randum Opinion dated June 27, 1986. Mem.Op. at 2–4; *see also Kurz,* 144 Mich.App. at 213, 375 N.W.2d 391 (failure to properly investigate does not constitute actual malice) (citing *Posthill v. Booth Newspapers, Inc.,* 118 Mich.App. 608, 626, 325 N.W.2d 511 (1982), *leave to appeal denied,* 417 Mich. 1050 (1983)).

**9.** In his Second Amended Complaint, Plaintiff alleges that only an excerpt of this statement is defamatory:

> Said broadcast also made the following statement:
>> "After she (Mrs. Haisenleder) was told that John had an 80–to–90% chance of recovery when he was first brought to Harrison, ..."
> Defendants knew that said statement was absolutely false and made same with actual malice. When the boy arrived at the hospital he was already too far gone, and the three hour difference between the time he was first brought to the hospital and the time Plaintiff Carl M. Pesta began treating him, made abso-

lutely no difference. That the condition he was in when he was first brought to the hospital was so far advanced, that it was impossible to save him, and the three hour period between the time he was brought to the hospital, and Dr. Pesta first saw him, made absolutely no difference. Defendants made this statement with actual malice.

(Second Amended Complaint ¶ 7) In Plaintiff's response to the present motion, however, Plaintiff appears to rely on the entire statement in support of his claim. Accordingly, the Court will consider whether Plaintiff can prove actual malice with respect to any allegedly false aspect of the entire statement.

**10.** With respect to the second statement, Defendants also argue that Plaintiff will be unable to prove that the statement concerned him. *See Kurz,* 144 Mich.App. at 209, 375 N.W.2d 391. The Court need not reach this issue because the issue of actual malice is dispositive.

**11.** Colleen Haisenleder is John's mother.

er's statement. As already stated by the Court, however, failure to investigate does not constitute actual malice. *See, e.g., Kurz,* 144 Mich.App. at 213, 375 N.W.2d 391. In the absence of any affirmative proof of actual malice, Defendants are also entitled to summary judgment on this aspect of Plaintiff's defamation claim.

For the reasons set forth above, Defendants' Motion for Summary Judgment will be GRANTED. Inasmuch as the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's defamation claim, Penny M. Pesta's derivative claim for loss of consortium will be DISMISSED. Defendants shall submit an appropriate order.